# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CROWDSTRIKE, INC.,                          )
                                            )
            Plaintiff,                      )    C.A. No. 17-146-GMS
                                            )
      v.                                    )    **REDACTED -**
                                            )    **PUBLIC VERSION**
NSS LABS, INC.,                             )
                                            )
            Defendant.                      )

## CROWDSTRIKE'S OPPOSITION TO MOTION TO DISMISS
## SECOND AMENDED COMPLAINT

OF COUNSEL:

Ryan Tyz
Erin Jones
Aaron Myers
TYZ LAW GROUP PC
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 849-3578

Dated: February 13, 2018
5622385 / 44589

Public Version Dated: February 20, 2018

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff CrowdStrike, Inc.*

**TABLE OF CONTENTS**

I.     NATURE AND STAGE OF THE PROCEEDINGS............................................................ 1

II.    INTRODUCTION............................................................................................................. 1

III.   THE WELL-PLEADED FACTS STATE CLAIMS FOR FRAUD AND
       TORTIOUS INTERFERENCE......................................................................................... 2

IV.    NSS'S MOTION TO DISMISS CROWDSTRIKE'S FRAUD AND TORTIOUS
       INTERFERENCE CLAIMS SHOULD BE DENIED ........................................................ 4

       A.     CrowdStrike has adequately pleaded a claim of fraud against NSS .......................... 4

       B.     CrowdStrike has adequately pleaded a claim of tortious interference
              against NSS in the alternative. ................................................................................. 9

V.     CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

CASES

**Page(s)**

*Espirit Health, LLC v. Univ. of Del.,*
C.A. No. 13-1385-RGA, 2013 U.S. Dist. LEXIS 178330
(D. Del. Dec. 19, 2013)...................................................................................................11

*Fisher v. Townsends, Inc.,*
695 A.2d 53 (Del. 1997) ...................................................................................................5

*Indep. Enters. v. Pittsburgh Water & Sewer Auth.,*
103 F.3d 1165 (3d Cir. 1997)..........................................................................................11

*Irwin & Leighton, Inc. v. W.M. Anderson Co.,*
532 A.2d 983 (Del. Ch. 1987)..........................................................................................10

*Nicolet, Inc. v. Nutt,*
525 A.2d 146 (Del. 1987) ...........................................................................................5, 6, 7

*NorthPointe Holdings, LLC v. Nationwide Emerging Managers, LLC,*
No. N09C-11-141 JOH, 2012 Del. Super. LEXIS 246
(Del. Super. May 24, 2012) ..............................................................................................10

*Norton v. Poplos,*
443 A.2d 1 (Del. 1982) ...............................................................................................5, 6, 8

*Opengate Capital Group LLC v. Thermo Fisher Sci. Inc.,*
C.A. No. 13-1475-GMS, 2014 U.S. Dist. LEXIS 92256
(D. Del. July 8, 2014)........................................................................................................4

*Phillips v. Cnty. of Allegheny,*
515 F.3d 224 (3d Cir. 2008)..........................................................................................2, 7

**STATUTES & RULES**

Computer Fraud and Abuse Act ....................................................................................................1

FED. R. CIV. P. 8 ...........................................................................................................2, 8, 9, 11

## I.   NATURE AND STAGE OF THE PROCEEDINGS

CrowdStrike filed its initial Complaint and requested a Temporary Restraining Order

against defendant NSS on February 10, 2017.  D.I. 2-3.  In opposing the TRO, NSS submitted a

declaration disclosing ███████████████████████████████████████████

████████████████████████████████████████████████████████████

CrowdStrike's proprietary and confidential software.  D.I. 8 ¶ 21.

CrowdStrike filed a First Amended Complaint on February 12, 2017.  D.I. 9 (FAC).  NSS

moved to dismiss all claims in the FAC, including CrowdStrike's tortious interference with

contract claim.  D.I. 14-15.  The Court denied NSS's motion on January 2, 2018, holding that

CrowdStrike had sufficiently alleged trade secret misappropriation and violations of the

Computer Fraud and Abuse Act, and exercising jurisdiction over CrowdStrike's tortious

interference claim.  D.I. 32.

On January 11, 2018, with NSS's consent and the Court's permission, CrowdStrike filed

a Second Amended Complaint to add claims for copyright infringement and fraud.  D.I. 34

("SAC").  NSS now moves to dismiss two claims of the SAC: the previously-challenged tortious

interference with contract claim (Count VI) and the newly-added fraud claim (Count VII).  D.I.

40-41.  NSS does not challenge CrowdStrike's copyright infringement or other claims.

## II.   INTRODUCTION

In response to CrowdStrike's refusal to authorize NSS to access and use CrowdStrike's

proprietary and confidential Falcon Platform, NSS orchestrated a fraudulent scheme to gain

unauthorized access to it.  Specifically, NSS ███ a third-party vendor to find a company that

would obtain a license and confidential login credentials to CrowdStrike's Falcon Platform, and

unwittingly provide those credentials to NSS through the third-party vendor, so that NSS could circumvent CrowdStrike's refusal and access CrowdStrike's products illegally.

In its motion to dismiss CrowdStrike's fraud claim, NSS ignores CrowdStrike's allegations about NSS's fraudulent conduct in organizing, engaging and ▆▆▆▆ a third party to submit a fraudulent purchase order to CrowdStrike. Under Delaware law, the purchase order was fraudulent and voidable because it contained false and misleading statements designed to induce CrowdStrike to enter the license, and it fraudulently concealed NSS's involvement, which would have sunk the deal if revealed. Though NSS attempts in its motion to pick off individual statements from the purchase order one-by-one in isolation, each of those statements actually confirms NSS's fraud when examined under the proper legal standards.

NSS's motion to dismiss CrowdStrike's tortious interference claim—because it is supposedly inconsistent with NSS's (mis)characterization of CrowdStrike's fraud claim—is equally meritless. Not only is NSS's argument based on a misleading paraphrase of what CrowdStrike actually alleges in the fraud count, it ignores CrowdStrike's right under Federal Rule of Civil Procedure 8 to "state as many separate claims or defenses as it has," in the alternative, "regardless of consistency."

As CrowdStrike has sufficiently alleged both fraud and tortious interference, NSS's second motion to dismiss should be denied.

## III.   THE WELL-PLEADED FACTS STATE CLAIMS FOR FRAUD AND TORTIOUS INTERFERENCE

In examining NSS's second motion to dismiss, all well-pleaded facts in the SAC must be accepted as true. *See, e.g., Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The detailed facts set forth in the SAC explain why CrowdStrike did not want to do business with

NSS, why CrowdStrike prohibited NSS from accessing CrowdStrike products, and why NSS

ultimately resorted to fraud to obtain access to CrowdStrike's Falcon Platform.

     CrowdStrike and NSS entered a written private testing agreement in April 2016.  D.I. 34

¶ 31 (SAC).  That agreement expressly prohibited NSS from ████████████████████████

███████████████████████████████████, and prohibited NSS from ████████

████████████████████████████████████████████████

████████.  *Id.* ¶¶ 32, 35.  CrowdStrike never provided any such ████████████████

████████ to NSS.  *Id.* ¶ 162.  NSS's private testing results demonstrated to CrowdStrike that

NSS's testing was flawed.  *Id.* ¶ 38.  Given a second chance to run the tests, NSS failed again.

*Id.* ¶¶ 39-40.  CrowdStrike and NSS discussed giving NSS a third chance to attempt a competent

private test, but NSS refused to proceed, as it wanted to run a public group test first.  *Id.* ¶ 41.

CrowdStrike told NSS that because of NSS's repeated testing failures, CrowdStrike would not

participate in the group test or authorize use of its products for that purpose.  *Id.* ¶ 42.

     Undeterred, NSS said it would test CrowdStrike products anyway, using login credentials

of a CrowdStrike customer.  *Id.* ¶ 43.  CrowdStrike explained that any such access was

unauthorized and forbidden under CrowdStrike's terms and conditions of service.  *Id.* ¶ 44.  On

January 19, 2017, CrowdStrike emailed NSS excerpts and a link to CrowdStrike's terms and

conditions of service, explaining why no customer could authorize NSS access to CrowdStrike

products for group testing, and that even if one tried, NSS was not permitted to use those

products.  *Id.* ¶¶ 46, 45, 48.

     Despite this explicit notice, NSS proceeded to orchestrate and carry out a conspiracy to

defraud CrowdStrike.  First, NSS secretly engaged David Thomason of Thomason Technologies

LLC ("Thomason") around December 2016 to find a client willing to enter a contract with

CrowdStrike for a Falcon Platform pilot license (hereinafter, the "License"). *Id.* ¶¶ 50-51. Thomason was the candidate because he was a former colleague of NSS's CTO Jason Brvenik. *Id.* ¶ 51. NSS agreed to ███████████ if Thomason would gain access and credentials from the client and provide those to NSS once the purchase order went through. *Id.* ¶¶ 51, 53. Following this scheme, around January 5, 2016, Thomason submitted a fraudulent purchase order to deceive CrowdStrike into making a sale. *Id.* ¶ 52. Although NSS and Thomason both knew that the purpose of the purchase order was for NSS to gain access to CrowdStrike products and that neither Thomason nor his client ████████████████, those details were deliberately concealed from the purchase order and from CrowdStrike. *Id.* ¶¶ 52, 53, 164.

Had the purchase order disclosed that the purchase was made to enable NSS to access and use CrowdStrike's Falcon Platform, CrowdStrike would never have approved it. *Id.* ¶ 166. Because the License was obtained through fraud, CrowdStrike is entitled to its rescission. *Id.* ¶ 167.

## IV.   NSS'S MOTION TO DISMISS CROWDSTRIKE'S FRAUD AND TORTIOUS INTERFERENCE CLAIMS SHOULD BE DENIED

### A.   CrowdStrike has adequately pleaded a claim of fraud against NSS

Fraud occurs when a person (1) falsely represents facts, or omits facts he had a duty to disclose, (2) knows or believes the representation is false, (3) intends to induce the plaintiff to act or refrain from acting, (4) the plaintiff acts in justifiable reliance on the misrepresentations, and (5) the plaintiff is injured through his reliance. *Opengate Capital Group LLC v. Thermo Fisher Sci. Inc.*, C.A. No. 13-1475-GMS, 2014 U.S. Dist. LEXIS 92256, at *36 (D. Del. July 8, 2014). In the Third Circuit, the same facts can also demonstrate that a contract was fraudulently induced and should be rescinded. *Id.* at *36-37. NSS only challenges the fraud claim on the first ground,

arguing that there were no false statements in the purchase order, and ignoring that NSS's identity as the real end user was improperly and fraudulently concealed.[1]

NSS's motion misses the mark. In portraying CrowdStrike's fraud claim as a mere question about the truth or falsity of a handful of statements on the purchase order, NSS conveniently overlooks all of CrowdStrike's other allegations regarding the nature and scope of the fraudulent scheme. As noted, the SAC specifically alleges that NSS knew CrowdStrike was unwilling to do business with NSS, and that was the motive behind NSS ███████████ Thomason to find a client to serve as a pretext for the License, lie to CrowdStrike about that client's role, and conceal facts about who would be purchasing, ████████, and accessing CrowdStrike's product, including in the ultimate purchase order. D.I. 34 ¶¶ 45, 46, 48, 50-53, 161-66 (SAC). Had it known of NSS's involvement, CrowdStrike would not have entered the License. *Id.* ¶ 166. NSS ignores these allegations and their implication that submission of the purchase order was fraudulent simply because NSS used a third-party to engage with CrowdStrike and seek a license, instead of submitting an honest and truthful purchase order in its own name. NSS did all this because it knew CrowdStrike would have refused the purchase order had it identified any involvement of NSS. But NSS's motion makes no challenge to this full scope of the fraud.

---

[1] In its motion, NSS does not meaningfully deny its liability for fraud. *See* D.I. 41 at 9 n. 2, 11 n.3. In Delaware, conspirators are "jointly and severally liable for the acts of co-conspirators committed in furtherance of the conspiracy." *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 150 (Del. 1987). Likewise, agents can "render[] the principal vicariously liable for [their] acts." *Fisher v. Townsends, Inc.*, 695 A.2d 53, 61 (Del. 1997); *cf. Norton v. Poplos*, 443 A.2d 1, 6 (Del. 1982) ("one who delegates the power to act is responsible for what is done pursuant to that authority."). Thomason's ███████████████████████████████████████████████████████, D.I. 41, Ex. A, confirm that Thomason was NSS's co-conspirator and/or agent in the fraud.

Instead, NSS focuses on the limited question of whether a handful of statements in the purchase order were false. NSS begins with a legal misconception, arguing that there can be no fraud if a few statements on the purchase order—such as those regarding the "Customer," "Sold To" party, and billing party—were facially true. D.I. 41 at 6, 9. But in Delaware, *even "facially true"* statements are actionable as fraud if they "cause[] a false impression as to the true state of affairs, and the actor fails to provide qualifying information to cure the mistaken belief." *See Norton v. Poplos*, 443 A.2d 1, 5 (Del. 1982) (a "half-truth may be as misleading as an assertion that is wholly false") (emphasis added). The purchase order's identification of Thomason's client ███████████████████████████████, and Thomason ██████████████, ██████, were deliberately made to deceive CrowdStrike about who it was dealing with,[2] because CrowdStrike would have rejected the purchase order had it identified NSS.[3] D.I. 34 ¶¶ 164-66. Because these statements are both overt misrepresentations and misleading half-truths meant to cause "a false impression as to the true state of affairs," they are actionable as fraud. *See Norton*, 443 A.2d at 5.

The purchase order and the statements within it demonstrate fraudulent concealment as well. In Delaware, "Fraud does not consist merely of overt misrepresentations. *It may also occur through deliberate concealment of material facts*, or by silence in the face of a duty to speak." *Nicolet*, 525 A.2d at 149 (approving tort claim based on fraudulent concealment) (emphasis added). Contrary to NSS's assertions, *see* D.I. 41 at 2, 10-12, fraud through active

---

[2] ████████████████████████████████████, attached to NSS's motion as Exhibit A, ███████████ ████████████████████████████, confirming that CrowdStrike was deliberately lied to about who the intended customer was for this purchase. *See* D.I. 41, Ex. A at 1.

[3] Tellingly, when NSS had a vendor recently submit a purchase order to CrowdStrike identifying NSS as the customer, CrowdStrike did not accept the order.

concealment is actionable even where there is no duty to speak. *See Nicolet*, 525 A.2d at 149-50. NSS's orchestration ███████ of the fraudulent purchase order, and its ██ agent's submission of that purchase order, were all meant to conceal NSS's identity to circumvent CrowdStrike's refusal to do business with NSS and obtain secret access to CrowdStrike's products for NSS. *See* D.I. 34 ¶¶ 161-66. Accordingly, the purchase order deliberately concealed any involvement by NSS, including that NSS was driving the purchase █████████ ███████, so that CrowdStrike would not reject the purchase order. *Id.* ¶¶ 164, 166. These concealed facts were clearly material: had the purchase order identified NSS, CrowdStrike would not have approved it. *Id.* ¶ 166. Consequently, even if all the statements on the purchase order were facially true in some sense, which they were not, NSS and its agent actively concealed material facts from CrowdStrike to deceive CrowdStrike into entering the License. The SAC sufficiently alleges actionable fraudulent concealment.

   And even if half-truths and concealment of material facts in the absence of any duty to speak were not actionable in Delaware, it would be inappropriate to dismiss CrowdStrike's claim on a motion to dismiss based on NSS's mischaracterization of the relevant facts. On a motion to dismiss, the view of the facts most favorable to CrowdStrike must control. *See Phillips*, 515 F.3d at 233. Still, NSS argues the fraud claim should be dismissed based on certain CrowdStrike statements that NSS interprets as "admissions" that the "customer" and "billing" party information on the purchase order are not false. For example, NSS suggests that CrowdStrike's declaration stating that it "entered into a licensing agreement" with Thomason's client, and CrowdStrike's identification in the SAC of a software "instance" as the client's, somehow transform Thomason's pre-textual identification ██████████ on the purchase order into something bona fide, which CrowdStrike cannot now claim constitutes fraud. D.I. 41 at 6-7.

Similarly, NSS suggests that because CrowdStrike dealt with NSS's agent Thomason and recognized Thomason ▮▮▮▮▮▮▮▮▮, Thomason's pre-textual identification ▮▮▮▮▮▮▮ ▮▮▮ on the purchase order cannot constitute fraud. *Id.* at 9-10.

    NSS's argument is misplaced for several reasons. First, these supposed CrowdStrike admissions—the declaration and allocation of a software instance in the client's name—preceded the discovery that NSS secretly engaged ▮▮▮▮ Thomason to find an unwitting customer to participate in a "pilot" in order for NSS to fraudulently gain access to CrowdStrike's Falcon Platform. *See* D.I. 8 ¶ 21. Second, NSS's characterizations of the statements in the purchase order (and the inferences it draws from them) ignore the allegations that those statements were made at NSS's request and in furtherance of NSS's fraudulent scheme to access CrowdStrike's products without permission, allegations that demonstrate that the statements on the purchase order were false and misleading when they were made.[4] Third, it ignores CrowdStrike's right to plead facts and claims—even inconsistent ones—in the alternative. *See* Fed. R. Civ. P. 8(d). Even if CrowdStrike had deliberately referred to Thomason's client as ▮▮▮▮▮▮▮ or as a licensee for purposes of one claim, that would not prevent CrowdStrike from taking an alternative view for purposes of another claim. *See id.* NSS's mischaracterization of the facts provides no basis to dismiss the fraud claim.

    NSS also misconstrues CrowdStrike's allegation that NSS's agent "Thomason knowingly never intended to pay for the license because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."

---

[4] And again, even facially true half-truths are actionable under Delaware law, and so even were it true on some level that ▮▮▮▮▮▮▮▮▮▮▮, and Thomason had ▮▮▮▮ ▮▮▮▮▮▮, there would still be fraud here because any and all statements on the purchase order were fraudulently made by Thomason in service of NSS's fraudulent scheme. *See Norton*, 443 A.2d at 5.

*See* D.I. 41 at 12.  NSS complains that the statement amounts to an improper attempt to

"bootstrap" a breach of contract claim into a fraud claim, labeling it a "'no one intended to pay'

theory of fraud."  *Id*.  As an initial matter, CrowdStrike does not assert a breach of contract claim

for failing to pay for the License.  Nor does CrowdStrike allege that the failure to pay for the

License was itself fraud.  Rather, the SAC describes the co-conspirators' failure to identify NSS

and NSS's ████████████████, and alleges that Thomason had no intention of paying

CrowdStrike, because those facts are further evidence that the purchase order and the statements

on it were knowingly fraudulent when submitted, such that the License was fraudulently

induced.  *See* D.I. 34 ¶ 164 (SAC).

        The failure of co-conspirator Thomason to pay, especially now that it is known that ████

████████████████████████████████████████, supports an inference

(properly alleged on information and belief, since it is an inference) that the promise to pay for

the License, made via the purchase order, was a knowingly false statement when made.  *Id*. ¶

164; *see also* D.I. 41 at 3-4, Ex. A.  Indeed, the evidence that NSS improperly submits outside of

the complaint—showing ████████████ (D.I. 41, Ex. A)—coupled with the allegation

that no payment was made to CrowdStrike (D.I. 34 ¶ 54), supports the reasonable inference that

NSS ████████████████████████████████████████

████████████.

        Accordingly, CrowdStrike's fraud claim is well-pleaded and NSS has stated no grounds

that justify its dismissal.

**B.**     **CrowdStrike has adequately pleaded a claim of tortious interference against
           NSS in the alternative.**

        A claim for tortious interference with contract has five elements under Delaware law: (1)

a valid contract; (2) about which the defendants have knowledge; (3) an intentional act by the

defendants that is a significant factor in causing the breach of contract; (4) done without justification; and (5) which causes injury. *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987).  NSS moves to dismiss this claim on the ground that NSS is not legally capable of interfering with the contract, if the Court accepts CrowdStrike's allegation that "NNS [sic] is a Real Party in Interest to the Quote and Purchase Order." D.I. 41 at 14-15.  But CrowdStrike *never made that allegation*.  And even if it had, the Federal Rules of Civil Procedure would still allow CrowdStrike to plead a tortious interference claim that relied on an alternative view of the facts.

NSS's theory stems from its misleading paraphrase of a single sentence in the text of CrowdStrike's Common Law Fraud Count (Count VII, paragraph 164).  *See* D.I. 41 at 14.  In that count, CrowdStrike stated only that NSS was a "real-party in interest *seeking to gain access to CrowdStrike products through the purchase order*." D.I. 34 ¶ 164 (emphasis added).  What CrowdStrike meant by this statement was that NSS was the *party whose interest drove the fraud* – it was NSS that secretly orchestrated, engaged ███████ Thomason to seek the License through which NSS's unauthorized access to CrowdStrike products was obtained.  CrowdStrike in no way admits or alleges that NSS gained any legal rights to access CrowdStrike products through the fraud, nor does it admit or allege that NSS could or should be viewed as having any contractual rights in the License.[5]  NSS acknowledges this tacitly where it points out that all the

---

[5] As explained by the only case cited by NSS on the issue, the status of "real party in interest" is a pleading concept that identifies the person who has the right to bring suit on a legal claim.  *See NorthPointe Holdings, LLC v. Nationwide Emerging Managers, LLC*, No. N09C-11-141 JOH, 2012 Del. Super. LEXIS 246, at *18-20 (Del. Super. May 24, 2012).  "Real party in interest" status *derives from* legal rights, such as contractual rights, not the other way around.  *See id.* Even if CrowdStrike had called NSS a "real party in interest" *to the purchase order*, which it did

other claims of the SAC are based on CrowdStrike's view that NSS is not a party to and has no

right to "enforce the terms of the Quote and Purchase order," a view that NSS emphatically

shares. *See* D.I. 41 at 8. NSS's attempt to fashion an escape from its wrongdoing by twisting a

single allegation of the SAC beyond recognition is not well taken.

But even had CrowdStrike explicitly alleged that NSS had some contractual interest in

the License for purposes of the fraud claim—which it plainly did not—there would still be no

grounds to dismiss the interference claim. The Federal Rules of Civil Procedure explicitly allow

parties to plead inconsistent claims. Fed. R. Civ. P. 8(d)(3) ("Inconsistent Claims or Defenses.

A party may state as many separate claims or defenses as it has, regardless of consistency.")

Even within a single count, a party "may set out 2 or more statements of a claim or defense

alternatively or hypothetically," and when this is done, "the pleading is sufficient if any one of

them is sufficient." Fed. R. Civ. P. 8(d)(2); *see also Espirit Health, LLC v. Univ. of Del.*, C.A.

No. 13-1385-RGA, 2013 U.S. Dist. LEXIS 178330, at *10 (D. Del. Dec. 19, 2013) (denying

motion to dismiss because "a court may not construe a plaintiff's 'claim as an admission against

another alternative or inconsistent claim'"); *Indep. Enters. v. Pittsburgh Water & Sewer Auth.*,

103 F.3d 1165, 1175 (3d Cir. 1997) ("[Rule 8] permits inconsistency in both legal and factual

allegations," especially when alternative claims "may require 'complex inquiries into the parties'

intent'").

---

not, this still would not clearly define what, if any contractual rights, NSS supposedly had in
either the purchase order or a resulting License. But as NSS and CrowdStrike clearly agree that
NSS has no contractual rights under the License, NSS cannot be a "real party in interest" to the
License. *See* D.I. 41 at 8.

11

Because NSS's request for dismissal of this claim rests entirely on the suggestion that NSS could not interfere with its own contract, NSS's request to dismiss the interference claim has no basis and must be denied.

## V.    **CONCLUSION**

NSS's comparison of the facts of this case to a child failing to disclose to a credit card company that his parent will be paying the credit card bills is inapt. A better analogy would be a parent—who has crashed a number of rental cars and been told by the rental car company that he will not be approved for any more car rentals—paying his child to approach the rental car company, pose as a customer, obtain a rental agreement and car keys, then hand the keys over to the parent, all in order to circumvent the car company's refusal to do business with the parent. As here, such a scheme is fraud.

For these reasons, CrowdStrike respectfully requests that NSS's motion to dismiss Counts VI and VII of the Second Amended Complaint be denied in its entirety. If the Court grants the motion in any respect, CrowdStrike requests leave to amend.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Ryan Tyz
Erin Jones
Aaron Myers
TYZ LAW GROUP PC
4 Embarcadero Center, Suite 1400
San Francisco, CA  94111
Tel:  (415) 849-3578

Dated:  February 13, 2018
5622385 / 44589
Public Version Dated: February 20, 2018

By:  */s/ David E. Moore*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff CrowdStrike, Inc.*