IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CROWDSTRIKE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-146 (MN) |
| | ) | |
| NSS LABS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

David E. Moore, Bindu A. Palapura, Stephanie E. O'Byrne, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Ryan Tyz, Erin Jones, Aaron Myers, TYZ LAW GROUP PC, San Francisco, CA – attorneys for Plaintiff

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Ian Feinberg, Elizabeth Day, Marc Belloli, FEINBERG DAY ALBERTI LIM & BELLOLI LLP, Menlo Park, CA – attorneys for Defendants

December 21, 2018
Wilmington, Delaware

*[signature]*

NOREIKA, U.S. DISTRICT JUDGE:

Before the Court is a motion to dismiss (D.I. 40) filed by Defendant NSS Labs, Inc. ("Defendant" or "NSS"), alleging that Plaintiff CrowdStrike, Inc. ("CrowdStrike") has failed to state a claim upon which relief can be granted with respect to Counts VI (Tortious Interference with Contract) and VII (Common Law Fraud) of the Second Amended Complaint (D.I. 34). For the reasons set forth below, the Court denies Defendant's motion to dismiss.

I. **BACKGROUND**

CrowdStrike is a privately-owned cybersecurity company founded in 2011. (D.I. 34 ¶ 15). CrowdStrike developed the "Falcon Platform" software to provide cybersecurity to its customers. (*Id.*). NSS is a company that, among other things, tests cybersecurity software and tools available in the marketplace to determine how well they stand up to attacks. (D.I. 34 ¶¶ 22-23). In addition to conducting public tests, NSS also conducts private tests of cybersecurity platforms under contracts with vendors. (*Id.*).

On or about April 11, 2016, CrowdStrike and NSS entered a written private testing agreement ("the Private Agreement") whereby NSS was to conduct a private test of CrowdStrike's Falcon cybersecurity platform ("the Falcon Platform") and to provide CrowdStrike with a report detailing the results of the test. (D.I. 34 ¶ 31). CrowdStrike alleges that NSS failed to perform the tests in a way that CrowdStrike deemed accurate. (*Id.* ¶38). NSS conducted additional testing in an attempt to remedy the failures CrowdStrike identified. (*Id.* ¶¶ 38-39). On January 18, 2016, during discussions regarding a third round of private testing, NSS notified CrowdStrike that it was planning to perform a public test of the Falcon Platform. (*Id.* at ¶ 40).

CrowdStrike alleges that the Private Agreement prohibited NSS from retaining or using CrowdStrike's confidential information (including software) and prohibited NSS from using

CrowdStrike's information to perform any public testing without separate express written approval from CrowdStrike. (*Id.* ¶¶ 32, 35). CrowdStrike never provided "separate express written approval" to NSS. (*Id.* ¶ 162). Moreover, CrowdStrike alleges that it told NSS that, because of NSS's repeated testing failures, CrowdStrike would not participate in a public group test or authorize use of its products for that purpose. (*Id.* ¶ 42). NSS allegedly responded that it would test CrowdStrike products anyway, using login credentials of a CrowdStrike customer. (*Id.* ¶ 43). CrowdStrike explained that any such access was unauthorized and forbidden under CrowdStrike's terms and conditions of service. (*Id.* ¶ 44). Nevertheless, according to CrowdStrike, NSS engaged David Thomason of Thomason Technologies LLC ("Thomason") to find a client willing to enter a contract with CrowdStrike for a Falcon Platform pilot license ("the License"). (*Id.* ¶¶ 50-51).

NSS allegedly agreed to pay Thomason if he would gain access and credentials from the client and provide those to NSS once the purchase order went through. (*Id.* ¶¶ 51, 53). Thomason submitted a purchase order to CrowdStrike. (*Id.* ¶ 52). CrowdStrike alleges that, although NSS and Thomason both knew that the purpose of the purchase order was for NSS to gain access to CrowdStrike products and that neither Thomason nor his client would pay for the purchase, those details were deliberately concealed from the purchase order and from CrowdStrike. (*Id.* ¶¶ 52, 53, 164). It further alleges that had the purchase order disclosed that the purchase was made to enable NSS to access and use CrowdStrike's Falcon Platform, CrowdStrike would never have approved it. (*Id.* ¶ 166). And it alleges that that NSS's access under false pretense caused CrowdStrike damage.

## II. LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The court may grant a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to plaintiff, [the] plaintiff is not entitled to relief." *Id.*

To survive a motion to dismiss, a complaint cannot rely on labels, conclusions, "and a formulaic recitation of the elements of a cause of action," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 644, 555 (2007), but instead "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). A claim is facially plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Further, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of the plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotations omitted). Lastly, "[i]n deciding a Rule 12(b)(6) motion, a court must consider *only* the complaint, exhibits

3

attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (emphasis added).

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purpose of Rule 9(b) is to provide defendants with notice of the precise nature of the claim against them, not to test the factual allegations of the claim. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Date, place, and time allegations are not required to satisfy Rule 9(b), so long as the circumstances of the alleged fraud are pled sufficiently "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.*; *Van Roy v. Sakhr Software Co.*, C.A. No. 11-00863 (LPS), 2014 WL 3367275, at *3 (D. Del. July 8, 2014).

### III. DISCUSSION

In their papers, the parties address dismissal of the two counts at issue in reverse order. The Court will follow suit.

#### A. Count VII – Common Law Fraud

A claim of common law fraud requires Plaintiff to show that: "(1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance." *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 958 (Del. 2005); *see also*

4

*OpenGate Capital Grp. LLC v. Thermo Fisher Sci. Inc.*, C.A. No. 13-1475-GMS, 2014 WL 3367675, at *11-12 (D. Del. July 8, 2014). The "representation" can be an overt misrepresentation, a deliberate concealment of materials facts, or silence in the face of a duty to speak. *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del. Supr. 1983).

Delaware courts allow claims for fraudulent inducement of a contract. *See OpenGate*, 2014 WL 3367675, at *12 (citing *Anvil Holding Corp. v. Iron Acquisition Co.*, 2013 WL 2249655, at *4 (Del. Ch. May 17, 2013) (denying the defendant's motion to dismiss the plaintiff's claims for fraud and fraudulent inducement)). "To plead fraudulent inducement, the plaintiff must allege the same elements as for a claim of fraud by misrepresentation or omission." *Id.* (citing *E.I. DuPont de Nemours & Co. v. Florida Evergreen Foliage*, 744 A.2d 457, 462 (Del. 1999) (requiring the plaintiff to allege the defendant's false representation of a material fact, scienter, intent to induce reliance, the plaintiffs action or inaction in justifiable reliance, and the plaintiff's damages resulting from such reliance)).

Here, the Second Amended Complaint alleges that NSS knew CrowdStrike had "refused to give NSS access for comparative testing" and thus NSS "orchestrated a scheme to covertly and fraudulently obtain CrowdStrike login credentials" by hiring Thomason "to find a company willing to contract with CrowdStrike for a Falcon Platform pilot license under the guise of being a potential customer." (D.I. 34 ¶¶ 50-51, *see also id.* ¶¶ 161-66). It alleges that Thomason, acting on NSS's behalf, then engaged Constellation to act as a potential customer even though the information being obtained was being paid for and given to NSS. (*Id.* ¶¶ 163-64). CrowdStrike alleges that it relied on the false representations that NSS induced and would not have approved the purchase order and provided login credentials had it known that NSS would be gaining access to the Falcon Platform. (*Id.* ¶ 166). And it alleges that, as a result, it was injured. (*Id.* ¶ 167).

In its motion, NSS argues that there were no false statements in the purchase order – that the "customer name," "sold to" party, and "billing party" listed were facially true and thus the purchase order is not fraudulent. (D.I. 41 at 6, 9). In Delaware, however, "facially true" statements may constitute fraud if they "cause[] a false impression as to the true state of affairs, and the actor fails to provide qualifying information to cure the mistaken belief." *Norton v. Poplos*, 443 A.2d 1, 5 (Del. 1982) (a "half-truth may be as misleading as an assertion that is wholly false"). Here, CrowdStrike alleges that the purchase order's identification of Thomason's client as the "Customer" and the software's "Sold To" party, and Thomason as the "Billing" party, were deliberately made to conceal NSS's attempts to obtain access to CrowdStrike's information and to deceive CrowdStrike about who it was dealing with, because CrowdStrike would have rejected the purchase order had it identified NSS. (D.I. 34 ¶¶ 164-66). Consequently, even if all the statements on the purchase order were facially true, it asserts that NSS and its agent (*i.e.*, Thomason) actively concealed material facts from CrowdStrike to deceive CrowdStrike to enter into the agreement with the putative customer. Taking these allegations as true, as the Court must at this stage, CrowdStrike has plausibly pleaded a claim of fraudulent inducement.

B.   **Count VI -- Tortious Interference**

Defendant argues that "[i]f the Court should find it plausible that NSS was a real party in interest to the Quote and Purchase Order, then Count VI for tortious interference should be dismissed because it is 'hornbook law' that one 'cannot tortiously interfere with its own contractual relations.'" (D.I. 41 at 15) (citing *The Renco Group, Inc. v. MacAndrews AMG Holdings LLC*, No. 7668, 2015 WL 394011, at *9 (Del. Ch. Jan. 29, 2015)). As an initial matter, CrowdStrike disputes that there is any allegation that NSS had a contractual interest in the License for purposes of the fraud claim. (D.I. 44 at 10 ("CrowdStrike *never made that allegation*.")). The Court,

6

however, need not resolve that dispute in connection with that motion. Pursuant to Rule 8 of the Federal Rules of Civil Procedure, CrowdStrike may plead claims or defenses in the alternative or ones that are consistent with one another. *See Indep. Enters. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997) ("[Rule 8] permits inconsistency in both legal and factual allegations," especially when alternative claims "may require 'complex inquiries into the parties' intent.'"). Rule 8(d)(2) entitled "*Alternative Statements of a Claim or Defense*" provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Rule 8(d)(3) entitled "*Inconsistent Claims or Defenses*" states that "[a] party may state as many separate claims or defenses as it has, regardless of consistency."

NSS's motion to dismiss Count VI is based on the assertion that, if the Court were to find a basis for Count VII, then Count VI must be dismissed. In essence, NSS seeks dismissal of Count VI as being inconsistent with Count VII. As stated above, CrowdStrike may plead in the alternative – or plead inconsistently with other counts. Thus, NSS's motion to dismiss Count VI is denied.

## IV. <u>CONCLUSION</u>

For the forgoing reasons, Defendant's Motion to Dismiss Counts VI and VII (D.I. 40) is DENIED. An appropriate order will follow.